**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GARY A. ADAMS, DENISE ADAMS, ) | |
| SHAQUEL ADAMS RILEY, TAILON ) | |
| ADAMS, GARY A. ADAMS, on behalf of ) | |
| BRYA ADAMS, a minor, and SHAQUEL ) | |
| ADAMS RILEY on behalf of her minor ) | |
| children, SAVON RILEY, SHANE ADAMS, ) | |
| SURRON ADAMS, STEFON ADAMS, ) | |
| TERREL JACKSON and SERENITY WEST ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 11-790 |
| ) | |
| KAREN SPRINGMEYER, ) | |
| JOHN DOE 1-11, ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

In this action, Plaintiffs Gary A. Adams, individually and on behalf of Brya Adams, a

minor, Denise Adams, and Shaquel Adams Riley, individually and on behalf of her minor

children Savon Riley, Shane Adams, Surron Adams, Stefon Adams, Terrel Jackson, and Serenity

West (collectively, "Plaintiffs") bring section 1983[1] and *Bivens*[2] claims against Defendants

Karen Springmeyer ("Defendant Springmeyer" or "Springmeyer") and John Does 1-11.[3]

---

[1]    42 U.S.C. § 1983.

[2]    A cause of action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971),
is the "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Ashcroft v. Iqbal*, 556
U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n. 2, 126 S. Ct. 1695
(2006)).

[3]    In their Amended Complaint, Plaintiffs state that their lawsuit arises out of violations of their Fourth
Amendment rights, which are "made actionable against any defendants acting under federal authority pursuant to the
[F]ifth [A]mendment . . . and/or if acting under color of state law pursuant to the Civil Rights Act of 1971, as
amended 42 U.S.C. § 1983."   (Docket No. 18 at ¶ 1; *see also id.* at ¶ 30).   Plaintiffs' reliance on the Fifth
Amendment is misplaced here, as the Fifth Amendment is not required to apply the Fourth Amendment to federal
actors. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999 (1971).
The Fourth Amendment applies directly to individuals acting under color of federal law. *See id.* at 396-97.   The
Fourth Amendment applies to the states through the Fourteenth Amendment. *See United States v. Cochran*, 806 F.
Supp. 560, 563 n.1 (E.D. Pa. 1992) ("The Fourth Amendment was incorporated into the Due Process clause of the

(Docket No. 18). Plaintiffs' claims arise out of their Fourth Amendment rights to be free from unreasonable searches, seizures, and excessive force.[4] (*See id.*). As members of a "federal, state, or local task force," Defendants entered Plaintiffs' home in the early morning of March 3, 2011 to execute an arrest warrant on an individual who had not resided there for almost two years. (*Id.* at ¶¶ 1, 24). Defendants broke down the doors of Plaintiffs' home, forced Plaintiffs outside by shouting profanities and pointing assault weapons at them, and refused to answer any of their questions until they had assembled on the sidewalk. (*Id.* at ¶¶ 1, 11-21). Plaintiffs seek to recover monetary damages, including compensatory and punitive damages, as well as an award of costs and attorneys' fees for the alleged violations of their Fourth Amendment rights. (*Id.* at 8).

Defendant Springmeyer, the only named defendant and purported supervisor of the task force, moves to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on several grounds: (1) Plaintiffs cannot bring a section 1983 claim against her because she was not acting under color of state law; (2) the doctrine of *respondeat superior* precludes her from liability under *Bivens*; (3) the Amended Complaint does not state enough facts to attribute any use of excessive force to her; and (4) she is entitled to qualified immunity. (Docket No. 21 at ¶¶ 1-5; *see also* Docket Nos. 22, 28). Springmeyer also argues that the Court cannot consider Plaintiffs' argument that she failed to intervene in the John Doe Defendants' use of excessive force because this argument was raised in Plaintiffs' briefing and not their Amended

---

Fourteenth Amendment by *Wolf v. Colorado*, 338 U.S. 25, 69 S. Ct. 1359 (1949) and thus made applicable to the states"); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982).

[4]     In evaluating a Motion to Dismiss, this Court must accept Plaintiffs' allegations as true and construe them in favor of Plaintiffs. *See Free Speech Coal., Inc. v. Attorney Gen. of the United States*, No. 10-4085, --- F.3d ---, 2012 U.S. Dist. LEXIS 7543, 2012 WL 1255056, at *11 (3d Cir. Apr. 16, 2012); *R & J Holding Co. v. Redevelopment Auth. of County of Montgomery*, 670 F.3d 420, 424 (3d Cir. 2011). Generally, this Court should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also Free Speech Coal., Inc.*, 2012 WL 1255056, at *11 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Complaint. (Docket No. 28 at 5). Upon consideration of all the parties' submissions and for the reasons outlined herein, Defendant Springmeyer's Motion to Dismiss under Rule 12(b)(6) is denied.

## II. BACKGROUND

### A. Statement of Facts[5]

A drug task force supervised by Defendant Springmeyer forcibly entered Plaintiffs' home to execute an arrest warrant for Sondra Hunter, a suspect who was entirely unrelated to Plaintiffs. (Docket No. 18 at ¶¶ 1, 7). Plaintiffs claim that Defendants knew or had reason to know that Hunter did not reside at the home, as she had moved out of the house several months before the Plaintiffs leased the same residence on June 5, 2010. (*Id.* at ¶¶ 1, 11-12). Living in the home at the time of the incident were Gary A. Adams, his wife Denise Adams, and their minor daughter, Bryna Adams. (*Id.* at ¶¶ 3-4). Tailon Adams, Shaquel Adams Riley, and Ms. Riley's minor children, Savon Riley, Shane Adams, Surron Adams, Stefon Adams, Terrel Jackson, and Serenity West, also resided in the home at that time. (*Id.* at ¶¶ 5-6). When the incident occurred, Plaintiffs ranged in ages from three to fifty-eight.[6] (*Id.* at ¶ 1). The Amended Complaint also states that Plaintiffs are "law abiding citizens of the United States, who have no record of criminal activity." (*Id.*).

At approximately 5:30 a.m. on March 3, 2011, Plaintiff Gary Adams was awakened by screams from the first floor of his home. (*Id.* at ¶ 13). When he descended the stairs from the second floor to the first floor, he observed a battering ram "violently" knock down the front door, and Defendants "stormed into the house pointing assault rifles at [him] and plaintiff Denise Adams and Shane Adams[,] who were on the first floor" at the time. (*Id.* at ¶ 14). Defendants

---

[5] *See supra* note 4.
[6] According to the caption of the Amended Complaint, seven of the thirteen plaintiffs are minors. (*See* Docket No. 18).

then aimed red laser targeting beams at Plaintiff Gary Adams's head, which "plac[ed] [him] in immediate fear that he was about to be shot in the head." (*Id.* at ¶ 15). Plaintiffs did not know that Defendants were law enforcement officers and instead believed that Defendants were "criminals breaking into their home in a 'home invasion.'" (*Id.* at ¶ 16).

Plaintiffs claim that approximately eleven individuals, presumably John Does 1-11,[7] entered the home through both the front and back doors. (*Id.* at ¶ 17). Defendants were "dressed in tactical ninja[-]like uniforms"[8] and shouted profanities at Plaintiffs, including "get the fuck down on the ground" and "shut the fuck up." (*Id.*). While Defendants pointed assault rifles at Plaintiffs, Defendants gathered Plaintiffs on the first floor of the house but refused to answer any questions regarding why they had broken into their home. (*Id.* at ¶ 18). Defendants then escorted Plaintiffs outside to the sidewalk even though Plaintiffs were dressed only in their bedtime clothing or underwear.[9] (*Id.* at ¶¶ 19-20). It was "freezing cold" outside at the time of this incident. (*Id.* at ¶ 1). In the course of the home invasion, Defendants also searched all of the rooms in Plaintiffs' home. (*Id.* at ¶ 27).

"At some point [during the raid]," Defendant Springmeyer identified herself as the supervising agent and explained that Defendants had entered Plaintiffs' home to execute an arrest warrant on Hunter. (*Id.* at ¶ 21). Plaintiffs state that "[a]t all times relevant hereto, [D]efendant Springmeyer participated in[,] directed, approved, and/or with knowledge of its unconstitutionality acquiesced in the conduct and actions, of other law enforcement officials, including ones acting as federal agents and/or ones acting under color of state law." (*Id.* at ¶ 22).

---

[7]     *See supra* note 4.

[8]     At argument, Counsel for Plaintiffs further described these uniforms as having hoods that obscured the identities of the individuals participating in the raid. (Tr. at 17, lns. 22-23).

[9]     Only Plaintiff Shaquel Adams Riley, who was in her "her twenties . . . [or] [m]aybe early thirties" at the time of the home invasion, was forced to stand outside in her underwear. (*See* Docket No. 18 at ¶ 20; Tr. at 24, lns. 18-19).

Plaintiff Gary Adams told Springmeyer that they were not associated with Hunter and that she lived in their home before they rented it. (*Id.* at ¶ 23). Furthermore, Plaintiffs claim that "[D]efendants knew or had reason to believe that [Plaintiffs] were the actual residents at the address appearing on any arrest warrant and likewise knew or had reason to believe that [P]laintiffs had no association whatsoever with the alleged suspect [Hunter]." (*Id.* at ¶ 24). Plaintiffs state that they "openly occupied and resided" in their home, which "was easily verifiable by anyone interested in determining who resided in such property." (*Id.* at ¶ 25).

As a consequence of this incident, Plaintiffs plan to vacate their home, as "their continued presence therein serves as a constant reminder of the events" that occurred.[10] (*Id.* at ¶ 28).

### B.    Procedural History

Plaintiffs filed their initial Complaint on June 15, 2011. (Docket No. 1). Thereafter, Defendant Springmeyer filed a Motion to Dismiss and accompanying Brief in Support. (Docket Nos. 9, 10). The Court construed Defendant Springmeyer's Motion to Dismiss as a motion to amend Plaintiffs' Complaint to state their claims with further specificity. (Docket No. 15). Said motion to amend was granted, and Plaintiffs filed an Amended Complaint on January 30, 2012. (Docket No. 18).

On February 29, 2012, Springmeyer filed a second Motion to Dismiss and Brief in Support. (Docket Nos. 21, 22). Plaintiffs filed a Brief in Opposition on March 13, 2012. (Docket No. 24).[11]    On March 26, 2012, the Court convened a hearing on Defendant Springmeyer's Motion to Dismiss. (Docket No. 26). During this hearing, the Court heard argument, and counsel for Defendant Springmeyer orally moved for the opportunity to file a

---

[10]    As of the time of the hearing on Defendant Springmeyer's Motion to Dismiss, which occurred on March 26, 2012, Plaintiffs had not yet vacated their home. (Tr. at 24, lns. 3-11). Counsel for Plaintiffs stated that one Plaintiff "may have left and relocated for a period of time" and may or may not have returned to the residence. (*Id.* at lns. 9-11).

[11]    Plaintiffs initially filed their brief at Docket No. 23, but they re-filed this document at Docket No. 24 because it was not signed.

Reply brief. (*Id.*). The Court granted said oral motion and ordered Defendant Springmeyer to file a Reply Brief and Plaintiffs to file a Sur-Reply Brief. (Docket No. 27). Defendant Springmeyer filed her Reply on April 13, 2012, and one week later, Plaintiffs filed their Sur-Reply. (Docket Nos. 28, 29). The transcript of the March 26, 2012 hearing has been produced and considered by the Court. (Docket No. 30).

Accordingly, Defendant Springmeyer's Motion to Dismiss is fully briefed and ripe for disposition.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Twombly*, 550 U.S. at 555. As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts

6

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 129 S. Ct. at 1947, 1950); *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 WL 296904 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), and the requirements of FED. R. CIV. P. 8 must still be met. *See Burch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1296 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. --

-, 131 S. Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)).

## IV.    DISCUSSION

Defendant Springmeyer advances several arguments in support of her Motion to Dismiss Plaintiffs' claims.  (*See* Docket Nos. 21, 22).  She contends that: (1) Plaintiffs failed to state a section 1983 claim because Springmeyer is a federal actor; (2) the theory of *respondeat superior* bars Plaintiffs' claims; (3) Plaintiffs failed to state a claim for excessive force against Springmeyer; and (4) Springmeyer is entitled to qualified immunity.  (Docket No. 21 at ¶¶ 1-5; *see also* Docket Nos. 22, 28).  Springmeyer also argues that the Court should not consider Plaintiffs' failure to intervene argument because it was raised only in their briefing and not their Amended Complaint.  (Docket Nos. 28 at 5).  The Court will address these arguments, in turn.

### A.    Section 1983 Claim

Defendant Springmeyer first argues that Plaintiffs cannot assert a section 1983 claim against her because she was not acting under color of state law at the time of the incident giving rise to their claims.  (Docket No. 22 at 5-6).  Instead, Springmeyer states that as an FBI agent, or more specifically as the "supervising agent of an FBI drug task force," she was a federal actor, and any claims against her must be brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S Ct. 1999 (1971).  (Docket No. 22 at 5-6; Docket No. 28 at 1-2).

Plaintiffs state in their Amended Complaint, however, that in addition to "acting as a federal agent . . . under color of federal law," Springmeyer was a state actor "to the extent that she was participating in a state or local drug task force supervising the aforesaid execution of an

arrest warrant, and/or an arrest warrant issued by a state court and/or in her capacity as a police officer employed by a state and/or municipal police department." (Docket No. 18 at ¶ 8; *see also* Docket No. 10 at 1-2).[12] Therefore, in addition to pleading that Springmeyer may be held liable under *Bivens* for depriving Plaintiffs of their constitutional rights to the extent that she acted under color of federal law, Plaintiffs also plead in the alternative that Springmeyer may be held liable under section 1983 for violating Plaintiffs' constitutional rights to the extent that she acted under color of state law.[13] (*See* Docket No. 18 at ¶ 8). Plaintiffs have projected both claims in their Amended Complaint. (*See id.*).

To establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, (1988) (citations omitted).[14] Section 1983 provides, in pertinent part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory* . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). An action under the color of state law "'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d. Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). Furthermore, "[a] person may be found to be a state actor when (1) he is a state

---

[12]     In Plaintiffs' responsive brief, they incorporate by reference their responsive brief to Defendant Springmeyer's first motion to dismiss. (Docket No. 24 at 7 n.2). Plaintiffs explain that the instant motion to dismiss "raises the same issues" as the first motion to dismiss. (*Id.*). Therefore, the Court will consider the brief filed at Docket No. 10.

[13]     Plaintiffs may plead their claims in the alternative or inconsistently. *See* FED. R. CIV. P. 8(d)(2)-(3).

[14]     Whether a constitutional violation occurred, which is step two of the two-step analysis promulgated by the Supreme Court in *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250 (1988), is discussed, *infra*, in Section IV(C).

official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744 (1982)). A police officer that acts under color of state law to violate an individual's constitutional rights is subject to liability under section 1983. *See Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (finding that "police officers who, acting under color of state law, violate an individual's federal constitutional or statutory rights are subject to liability under § 1983").

Plaintiffs have pled that Springmeyer may be regarded as acting under color of state law by "participating in a state or local drug task force," by executing "an arrest warrant issued by a state court," and by being "employed by a state and/or municipal department." (Docket No. 18 at ¶ 8). These facts are sufficient to illustrate that, when executing the arrest warrant at Plaintiffs' home with John Does 1-11, Defendant Springmeyer acted under color of state law. *See Curley*, 298 F.3d at 277; *Angelico*, 184 F.3d at 277.

Moreover, Defendant Springmeyer may be held liable under section 1983 for acting under the color of state law even by virtue of her interactions with the other John Doe Defendants. Despite Springmeyer's contention otherwise, there are limited circumstances in which a section 1983 claim may be brought against a federal officer. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998).

Although "federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law," "[i]t is a well-established principle . . . that federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of state law, for example in conspiracy

with state officials." *Hindes*, 137 F.3d at 158 (citations omitted).[15]  In *Melo v. Hafer*, 912 F.2d

628, 638 (3d Cir. 1990), *aff'd on other grounds*, 502 U.S. 21, 112 S. Ct. 358 (1991), the U.S.

Court of Appeals for the Third Circuit stated that federal officials "are treated as acting under

color of state law" if they "conspire with state officials to violate someone's constitutional

rights."  The Court of Appeals reasoned that if private parties may be deemed to act under color

of state law due to the existence of a conspiracy with state officials, then it logically follows that

federal officials may be similarly regarded.  *Melo*, 912 F.2d at 638 (citing *Hampton v. Hanrahan*,

600 F.2d 600, 623 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S. Ct. 1987

(1980)).[16]

Plaintiffs cite three cases from other circuits in support of the proposition that Defendant

Springmeyer may be held liable under section 1983 "as a joint participant" with the state actors

involved in the alleged violations of Plaintiffs' Fourth Amendment rights.  (Docket No. 14 at 1-

2).  In each of these cases, the respective courts state that a federal officer or official may be held

liable under section 1983 if a *joint conspiracy*, not joint participation, exists between the federal

and state actors.  *See Kletschka v. Driver*, 411 F.2d 436, 448-49 (2d Cir. 1969) (holding that

---

[15]      To state a claim for conspiracy under section 1983, "a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions rights actions against individual defendants." *Goodson v. Maggi*, 797 F. Supp. 2d 624, 638 (W.D. Pa. 2011) (citation omitted). Moreover, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Id.* A plaintiff must also establish "that there was an agreement, understanding, or 'meeting of the minds' to violate the plaintiff's rights." *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)).  The pleading standards set forth in *Iqbal* and *Twombly* require "enough factual matter (taken as true) to suggest that an agreement was made, in other words, plausible grounds to infer an agreement." *Goodson*, 797 F. Supp. 2d at 638 (quoting *Great W. Mining & Mineral Co.*, 615 F.3d 159 178 (3d Cir. 2010)).

[16]      A *private* actor may be held liable under section 1983 if he or she "'jointly engaged with state officials in the prohibited action.'" *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005) (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152 (1966)).  To determine whether a private actor is "jointly engaged," a court analyzes whether "there is a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself." *Harvey*, 421 F.3d at 195.  A private actor must be at least a "willful participant in joint activity with the State or its agents." *Id.* Within this context, "willful" means "voluntary, uncoerced participation." *Id.* at 196.  The standards governing a private actor's liability under section 1983 have not been extended to apply to federal actors, although the analogy made in *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990), *aff'd on other grounds*, 502 U.S. 21, 112 S. Ct. 358 (1991), is suggestive of such an application.

there was "no reason why a joint conspiracy between federal and state officials should not carry the same consequences under § 1983 as does joint action by state officials and private persons"); *Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 U.S. Dist. LEXIS 2551, 2004 WL 324880, at *11 (S.D.N.Y. Feb. 19, 2004) (stating, "A federal officer may be held liable for conspiring with state officials who violate § 1983") (citing *Kletschka*, 411 F.2d at 448-49); *Peck v. United States*, 470 F. Supp. 1003, 1007 (S.D.N.Y. 1979) (stating, "[A]ctions of federal officers may be the subject of a § 1983 suit if there is proof of a joint conspiracy with state officials") (citing *Kletschka*, 411 F.2d at 448).

Although the Court of Appeals in *Hindes* stated that a conspiracy between federal and state officials is only one way in which section 1983 liability may extend to a federal official, no court within the Third Circuit has treated a federal official as acting under color of state law in any other circumstances. *See Gomez v. Feissner*, 2010 U.S. Dist. LEXIS 137388, 2010 WL 546325, at *5 (M.D. Pa. Dec. 29, 2010), *rev'd in part on other grounds*, No. 11-1241, 2012 U.S. App. LEXIS 6450, 2012 WL 1065869 (3d Cir. Mar. 30, 2012). As a result, it is unclear precisely what other situations would bring a federal officer into the realm of section 1983 liability, although *Hindes* suggests that these other situations do exist. *See Hindes*, 137 F.3d at 158. To determine whether the instant case is one in which a federal officer may be held liable under section 1983, further development of the record is needed. *Cf. Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, No. 10-4085, --- F.3d ---, 2012 U.S. Dist. LEXIS 7543, 2012 WL 1255056, at *8, *11 (3d Cir. Apr. 16, 2012) (vacating the district court's dismissal of the plaintiffs' as-applied First Amendment claim because "[p]laintiffs should be afforded the opportunity to conduct discovery and develop the record regarding whether the Statutes [18 U.S.C. §§ 2257 and 2257A] are narrowly tailored").

Regardless, if the Court accepts Plaintiffs' factual allegations as true and considers them in Plaintiffs' favor as the Court is required to do at the motion to dismiss stage, then Plaintiffs have alleged sufficient facts to support a section 1983 claim against Springmeyer. *See Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 2012 WL 1255056, at *11; *R & J Holding Co. v. Redevelopment Auth. of County of Montgomery*, 670 F.3d 420, 424 (3d Cir. 2011). Plaintiffs have stated that Defendant Springmeyer was a state actor "to the extent that she was participating in a state or local drug task force supervising the aforesaid execution of an arrest warrant, and/or an arrest warrant issued by a state court and/or in her capacity as a police officer employed by a state and/or municipal police department." (Docket No. 18 at ¶ 8). The Court again notes that, because Plaintiffs have pled that Springmeyer was acting under color of state law, or alternatively under color of federal law, Plaintiffs have contemplated recovery under either section 1983 or *Bivens*. With the benefit of a more fully-developed record, it will be clear whether a section 1983 claim or its federal counterpart, the *Bivens* action, is more appropriate here.[17]

Accordingly, Defendant Springmeyer's motion to dismiss Plaintiffs' section 1983 claim is denied.

### B.  *Respondeat Superior*

Defendant Springmeyer also asserts that, because Plaintiffs identify her as a "supervising agent" in their Complaint and do not sufficiently plead her personal involvement in the events giving rise to the instant suit, she is precluded from *Bivens* liability under the theory of *respondeat superior*. (Docket No. 22 at 6-7). Plaintiffs contend, however, that Springmeyer was "*directly involved* in the violation of [their] constitutional rights" in that she participated in the

---

[17]  When Plaintiffs can determine whether a section 1983 claim or a *Bivens* claim is more appropriate, the Amended Complaint should be amended to remove the unnecessary claim and to conform to the record. *See* Fed. R. Civ. P. 15(a)(2).

alleged violations, as well as directed, approved, and acquiesced in them. (Docket No. 24 at 1-2). Therefore, Plaintiffs argue that, in addition to assuming a supervisory role in the execution of the search warrant in Plaintiffs' home, Springmeyer was personally involved in the constitutional violations such that the theory of *respondeat superior* is inapplicable. (*Id.* at 2).

There are two theories of supervisory liability: (1) one in which liability may be imposed if supervisors "'established and maintained a policy, practice, or custom which directly caused [the] constitutional harm'";[18] and (2) another in which liability may be imposed if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Because Plaintiffs claim that Defendant Springmeyer is liable for participating, directing, approving and/or acquiescing in the the alleged unconstitutional conduct, the second theory of supervisory liability would appear to apply.[19] (*See* Docket No. 18 at ¶¶ 1, 7, 22).

Springmeyer largely relies on *Iqbal* in support of the argument that her remote role in the events giving rise to the Amended Complaint precludes Plaintiffs from establishing a *Bivens*

---

[18] A supervisor may be held liable for "implent[ing] a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011). In these cases, the supervisory liability claim may be premised on a "failure to train" theory, and plaintiffs must demonstrate that the "failure to train amounts to deliberate indifference to the rights of person with whom the [untrained persons] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989); *see also Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) (holding that policymakers may be liable under section 1983 if they, with deliberate inference to the consequences, and maintained a policy, practice or custom which directly caused [the] constitutional harm"). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

[19] Because the record has not been fully developed at this early stage of litigation, Plaintiffs are not precluded from later amending their Amended Complaint to account for a claim arising under the first theory of supervisory liability. *See* FED. R. CIV. P. 15(a)(2) (stating that a party may amend a complaint upon leave of court and that "[t]he court should freely give leave when justice so requires"); *see e.g. A.E. ex rel N.E. v. Patriot Pre-Sch.*, Civ. Act. No. 11-2923 (JAP), 2011 U.S. Dist. LEXIS 118105, 2011 WL 4860034, at *2-3 (D.N.J. Oct. 12, 2011) (granting the plaintiff leave to amend his complaint to add three new causes of action that arose out of newly-discovered evidence obtained during discovery).

action against her.  (Docket No. 22 at 7-11).  In *Iqbal*, 556 U.S. at 667, the respondent was arrested on charges of fraud in relation to identification of documents and conspiracy to defraud the United States.   Pending trial, he was identified as a person of "high interest" to the investigation following the September 11, 2001 terrorist attacks and was subsequently housed in a maximum security facility. *Id.* at 667-68.  After he pled guilty to the criminal charges against him, served a term of imprisonment, and was removed to his native Pakistan, the respondent filed a *Bivens* action against John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the Director of the FBI, as well as numerous other current and former federal officials and "John Doe" federal corrections officers.  *Id.* at 666, 668.  In his complaint, the respondent alleged that Ashcroft and Mueller "adopted an unconstitutional policy that subjected respondent to harsh conditions of confinement on account of his race, religion, or national origin" and could be held liable under a theory of supervisory liability.  *Id.* at 666, 677.

The Supreme Court stated, however, that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Id.* at 676.  The Court further explained:

> In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

556 U.S. at 677.  Consequently, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 676.  The Court ultimately rejected the respondent's argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."  *Id.*

The facts of the instant matter are distinguishable from those in *Iqbal*. Plaintiffs do not rely on the theory of *respondeat superior* or vicarious liability in stating a claim against Defendant Springmeyer; rather, they allege that she "participated in[,] directed, approved, and/or with knowledge of its unconstitutionality acquiesced in the conduct and actions, of other law enforcement officers, including ones acting as federal agents and/or ones acting under color of state law." (*Id.* at ¶ 22). Plaintiffs make clear that Springmeyer participated in the raid at their home and had in-person contact with Plaintiffs. (*Id.* at ¶¶ 7, 21-22). Unlike in *Iqbal*, where Ashcroft and Mueller, two high ranking federal officials, had only "mere knowledge" of the alleged unconstitutional policy, Defendant Springmeyer played an integral and active part in the attempted execution of the arrest warrant in Plaintiffs' home. (*Id.*). As a result, Springmeyer's involvement cannot be characterized in the remote manner that Springmeyer advances in her briefs. (*See* Docket Nos. 22, 28).

Following *Iqbal*, the "viability and scope of supervisory liability" is unclear. *Santiago*, 629 F.3d at 130 n.8. More specifically, "it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding [a defendant] liable with respect to [] Fourteenth Amendment claims." *Baker v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009). The United States Court of Appeals for the Third Circuit has declined to "answer[] the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) (citing *Santiago*, 629 F.3d at 130 n.8; *Bayer*, 577 F.3d at 190 n.5); *accord Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (recognizing, "The Supreme Court's recent pronouncement in *Iqbal* may further restrict the incidents in which the 'failure to supervise' will result in liability"); *Maldonado v. Fontanes*, 568 F.3d 263, 274-75 n.7 (1st Cir.

2009) (noting that "recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability.")

As such, courts within the Third Circuit have continued to apply the traditional rule that "'[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Sykes v. Carroll*, No. 11-4576, --- F. App'x ---, 2012 U.S. Dist. LEXIS 8692, 2012 WL 1492262, at *1 (3d Cir. Apr. 30, 2012) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)); *see also Campbell v. Gibb*, Civ. No. 10-6584 (JBS), 2012 U.S. Dist. LEXIS 23363, 2012 WL 603204, at *10 n.6 (D.N.J. Feb. 21, 2012) (determining that the court would "continue to apply the Third Circuit's traditional supervisory liability analysis"); *Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010) (stating, "it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right"). This Court similarly recognizes the continued existence of supervisory liability absent contrary controlling precedent. *See e.g. Pondexter v. Allegheny County*, Civ. Act. No. 11-857, 2012 U.S. Dist. LEXIS 24521, 2012 WL 628494, at *4-5 (W.D. Pa. Feb. 27, 2012) (finding that the section 1983 claim against one defendant, who was sued in his individual capacity, could be dismissed since the plaintiff did not plead that he was personally involved in any alleged misconduct).

Again, Plaintiffs have alleged sufficient facts to demonstrate that Defendant Springmeyer was personally involved in the unconstitutional conduct. In addition to pleading that Springmeyer was present during the raid on Plaintiffs' home, Plaintiffs allege that she

participated in, directed, and acquiesced in the conduct of the John Doe Defendants. (*Id.* at ¶¶ 7, 22). *See Argueta*, 643 F.3d at 72 (finding that "'[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence") (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *see also Simonton v. Tennis*, 437 F. App'x 60, 64 (3d Cir. 2011) (stating, "To establish an action for supervisory liability, a plaintiff must demonstrate that the supervising officials: (1) personally participated in violating a person's rights; (2) directed others to violate a person's rights; or (3) had knowledge of and acquiesced in a subordinate's violations of a person's rights") (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78, 126 S. Ct. 2405 (2006)); *Festa v. Jordan*, 803 F. Supp. 2d 319, 325 (M.D. Pa. 2011) (finding that the defendant's "mere presence at the scenes of the searches, moreover, plausibly suggest actual knowledge and acquiescence in the events that occurred"). Springmeyer also admitted directly to Plaintiffs that she supervised the execution of the warrant issued for Hunter's arrest. (*Id.* at ¶ 21). From these facts, the Court can ascertain that Springmeyer played an integral role in the home invasion and that she had knowledge of the John Doe Defendants' actions. *See Fowler*, 578 F.3d at 211 ("This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense'") (quoting *Iqbal*, 129 S. Ct. at 1949).

Although Springmeyer argues that Plaintiffs' allegations "contain no meaningful facts and are bereft of the particularity required to raise a claim from possible to plausible," the Court disagrees in light of the circumstances from which these claims arose. (Docket No. 22 at 9). As alleged, the drug task force forcibly entered Plaintiffs' home in the early morning hours, awoke Plaintiffs from their sleep, gathered them at gun point, shouted obscenities at them, and removed

them from their home. (Docket No. 18 at ¶¶ 1, 13-20). Defendants did not identify themselves upon entry into the home, and Plaintiffs did not understand what was occurring until Defendants escorted them outside to stand on the sidewalk in the cold. (*Id.* at ¶¶ 18-20). Defendants wore "tactical ninja-like uniforms" that obscured their identities. (*Id.* at ¶ 17). Plaintiffs only learned of Springmeyer's identity because she introduced herself and stated that she supervised the raid. (*Id.* at ¶ 21). Given the nature and circumstances of this incident, it would be difficult for Plaintiffs to plead the facts in their Amended Complaint with any more specificity. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (stating, "The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible") (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).[20]

Accordingly, the Court finds that Plaintiffs have pled, with sufficient factual detail, Defendant Springmeyer's participation in the raid on Plaintiffs' home, such that discovery should ensue as to whether Springmeyer may be held liable under *Bivens*. Defendant Springmeyer's motion to dismiss is denied on this ground.

---

[20] The Court is cognizant of Rule 11 of the Federal Rules of Civil Procedure, which requires attorneys to "certify[] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Generally, Rule 11 "'imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Oswell v. Morgan Stanley Dean Witter & Co.*, 507 F. Supp. 2d 484, 488 (D.N.J. 2007) (quoting *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986)). At argument, counsel for Plaintiffs stated that he conducted a reasonable inquiry prior to bringing the suit; however, no means were available to obtain any additional facts regarding the events occurring at Plaintiffs' home on March 3, 2011. (*See* Tr. at 17-20, 24-25). At least some of this information is undoubtedly in the possession of Defendant Springmeyer and apparently has not been voluntarily shared with Plaintiffs. (*See e.g. id.* at 8, lns 3-6). By its ruling, the Court will permit Plaintiffs to obtain these additional facts through the discovery process, as noted above.

## C.     Excessive Force[21]

Defendant Springmeyer further argues that Plaintiffs fail to state a claim for excessive force under the Fourth Amendment's objective reasonableness standard.  (Docket No. 22 at 11). Springmeyer alleges that, because Plaintiffs did not plead that she *individually* used unreasonable physical force during the execution of the arrest warrant, the excessive force claim against her must be dismissed.  (*Id.* at 12; *see also* Docket No. 28 at 4).  As discussed previously, Plaintiffs aver that "[a]t all times relevant hereto, defendant Springmeyer participated in[,] directed, approved, and/or with knowledge of its unconstitutionality acquiesced in the conduct and actions, of other law enforcement officials."  (Docket No. 18 at ¶ 22).  Therefore, it is evident from Plaintiffs' Amended Complaint that Defendant Springmeyer, along with the eleven John Doe Defendants, was responsible for the excessive force that was allegedly used against Plaintiffs.  (*Id.*).  Again, based on the nature and circumstances of the home invasion and the "tactical ninja[-]like uniforms" worn by Defendants during the raid that obscured their identities, it would be unreasonable to require Plaintiffs to plead these facts with further specificity at this time.  (*Id.* at ¶¶ 13-23).

"[A]ll claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other 'seizure,' should be analyzed under the Fourth Amendment."  *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989)).  The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable searches and seizures' of the person."  *Graham*, 490 U.S. at 394.  A seizure occurs "whenever an officer restrains the freedom of a person to walk

---

[21]     Plaintiffs plead claims arising out of their Fourth Amendment rights to be free from unreasonable searches, seizures, and excessive force.  (*See* Docket No. 18 at ¶¶ 1, 29).  Defendant Springmeyer's Motion to Dismiss only addresses the excessive force claim in the context of this argument: namely that Springmeyer did not individually use unreasonable physical force.  (*See* Docket No. 22 at 12; Docket No. 28 at 4).

away." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694 (1985) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574 (1975)); *accord Gale v. Storti*, 608 F. Supp. 2d 629, 633 (E.D. Pa. 2009) ("A person is 'seized' under the Fourth Amendment if he or she does not feel free to leave") (citing *Shuman ex rel Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005)). From the face of the Amended Complaint, Plaintiffs have pled sufficient facts to demonstrate that a seizure occurred in that Plaintiffs were deprived of their ability to "walk away" from the scene. *See Tennessee*, 471 U.S. at 7.

Under the Fourth Amendment, "the standard for a[n] . . . excessive force claim is one of objective reasonableness, which assesses the circumstances 'from the perspective of a reasonable officer on the scene.'" *Jackson v. City of Pittsburgh*, 688 F. Supp. 2d 379, 392 (W.D. Pa. 2010) (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004); citing *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005)). Courts may not rely on "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Furthermore, reasonableness is evaluated on a case-by-case basis depending on such facts and circumstances as "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Jackson*, 381 F.3d at 392 (quoting *Graham*, 490 U.S. at 396; citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)); *see also Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) ("The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations'") (quoting *Graham*, 490 U.S. at 397). In addition to these "Graham factors," the U.S. Court of Appeals for the Third Circuit has delineated additional considerations: "the duration of the action, whether the action takes place in the context of

effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers may contend at one time." *Sharrar*, 128 F.3d at 822. "In assessing the reasonableness of the officers' actions," courts must "account for the fact that [officers] must make 'split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary.'" *Kubicki v. Whitemarsh Twp.*, 270 F. App'x 127, 129 (3d Cir. 2008) (quoting *Couden v. Duffy*, 446 F.3d 483, 493 (3d Cir. 2006)).

Here, Defendant Springmeyer does not dispute that a seizure occurred or that any force used against the Plaintiffs was unreasonable. (*See* Docket Nos. 22, 28). Rather, Springmeyer argues that any conduct amounting to excessive force was not attributable to her. (Docket No. 22 at 12). As explained above, however, Springmeyer may be held liable under *Bivens* or section 1983 for infringing on Plaintiffs' Fourth Amendment rights even where she did not actively or physically participate in the unconstitutional conduct. *See Simonton*, 437 F. App'x at 64; *Argueta*, 643 F.3d at 72. Springmeyer's direction of the other Defendants' actions or, alternatively, her knowledge and acquiescence of their use of excessive force are each sufficient to state a plausible claim and hold her liable. *See e.g. Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (holding that a police officer may be held liable for excessive force under section 1983 even where he did not personally use excessive force or direct others to use it).

In addition to pleading that Springmeyer participated in the home invasion, Plaintiffs have pled sufficient facts to show that all Defendants, including Springmeyer, used excessive force. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001) (explaining, "The 'SWAT' designation does not grant license to law enforcement officers to abuse suspects or bystanders, or to vent in an unprofessional manner their own pent-up aggression, personal frustration or animosity toward others"). When considering the facts "from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the force used here may be found unreasonable.[22] *See Graham*, 490 U.S. at 396.

Defendants arrived at Plaintiffs' home in the early morning to execute an arrest warrant for a drug-related crime on an individual who did not reside there. (Docket No. 18 at ¶ 1). Courts have recognized that the time of day in which a search occurs at a private residence "'may be a significant factor in determining whether in a *Fourth Amendment* sense, the search is unreasonable.'" *Walker v. City of Wilmington*, 360 F. App'x 305, 314 (3d Cir. 2010) (quoting *United States ex rel. Boyance v. Myers*, 398 F.2d 896, 897 (3d Cir. 1968)); *see also Perez v. Borough of Berwick*, Case No. 4:07-CV-02291, 2009 U.S. Dist. LEXIS 35778, 2009 WL 1139642, at *6 (M.D. Pa. Apr. 28, 2009). Accordingly, the fact that the raid on Plaintiffs' home occurred in the middle of the night may contribute to a finding that the officers' actions were unreasonable.

Based on Plaintiffs' allegations, it is unknown whether the target of the warrant, Sondra Hunter, posed a threat of violence that originally warranted the use of a task force, battering ram, ninja-like uniforms, and assault rifles. (*See* Docket No. 18). It is also unknown if these methods were utilized due to some anticipated dangerous condition at the home. In any event, once Defendants ascertained that Hunter was not present at the residence, any need for these tactics should have dissipated. *See e.g. Ansell v. Ross Twp.*, 419 F. App'x 209, 213 (3d Cir. 2011) (finding that excessive force was adequately alleged where the plaintiff was "sleeping, alone, unarmed, and cooperative" and deputy sheriffs dragged him from his bed, pointed guns at him, threatened to shoot him, and slammed him against a wall); *Couden*, 446 F.3d at 497 (finding excessive force where four officers used mace, pointed guns, and handcuffed an otherwise

---

[22]    "Reasonableness [of force] under the Fourth Amendment should frequently remain a question for the jury," *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)); *accord Estate of Smith v. Marasco*, 318 F.3d 497, 515–16 (3d Cir. 2003).

cooperative and unarmed subject); *Baker*, 50 F.3d at 1193 (noting that police officers could be held liable for using excessive force where they pointed guns at and handcuffed several individuals that posed no threat of danger). Plaintiffs, some of whom were minors as young as three years old at the time of the incident, plead that they did not resist arrest, attempt to flee, or otherwise pose a threat to the safety of the officers. *See e.g. Holland*, 268 F.3d at 1193 (holding that detaining children at gunpoint after officers had gained control of the situation constituted an unconstitutional seizure). From these alleged facts, Plaintiffs' actions did not in any way provoke Defendants to point assault weapons or to shout profanity at them. (*See* Docket No. 18).

Furthermore, despite the fact that thirteen individuals who resided in the home were subject to the task force raid, seven of the thirteen individuals were minors. Thus, the Court cannot conclude that Plaintiffs collectively posed a threat to the Defendants by virtue of their numerosity. *See e.g. Christian v. Orr*, Civ. Act. No. 08-2397, 2012 U.S. Dist. LEXIS 19996, 2011 WL 710209, at *7 (E.D. Pa. Mar. 1, 2011) (determining that, among other facts, the presence of four children under age fourteen as well as two mothers accompanying these children, out of a total of nine individuals present at the barber shop where a search warrant was executed, gave rise to the conclusion that police officers used excessive force when executing a search warrant).

Plaintiffs also plead that they complied with Defendants' directions and asked for clarification regarding why Defendants were there, as Plaintiffs believed they were criminals executing a home invasion. (Docket No. 18 at ¶¶ 13-20). Plaintiffs' requests for information were rebuffed, and they were ushered outside while improperly attired, "to stand on the sidewalk exposed to the elements." (*Id.* at ¶¶ 18-20). Only once they were outside did Plaintiffs receive an explanation of what had happened. (*Id.* at ¶ 21). Considering that Plaintiffs were allegedly

innocent victims to the task force's raid on their home, all of the Defendants' use of force may have risen to the level of being objectively unreasonable in light of the facts confronting the officers. *See Graham*, 490 U.S. at 397; *Sharrar*, 128 F.3d at 822.

Additionally, the very presence of Defendants in Plaintiffs' home could be found unreasonable due to the fact that the arrest warrant's target had not lived at that particular location for well over a year. *See Rivas*, 365 F.3d at 198 (finding that it is permissible to consider "all of the relevant circumstances leading up to the time that the officers allegedly used excessive force"). Plaintiffs maintain that they openly resided in their home "such that their possessions and residence therein was easily verifiable by anyone interested in determining who resided in such property." (Docket No. 18 at ¶ 25). They had no association with the alleged suspect and had reason to believe that Defendants had conducted surveillance of their home and thus should have known that the suspect did not live there. (*Id.* at ¶¶ 23-24). Consequently, the nature and circumstances surrounding the incident at issue here, and the execution of the arrest warrant at a location in which the target no longer resided, reinforce a finding that Defendants may have used excessive force in violation of Plaintiffs' Fourth Amendment rights. *See Rivas*, 365 F.3d at 198.

Although Plaintiffs also argue that Springmeyer's failure to intervene establishes her section 1983 liability for excessive force by subordinate officers, this claim has not been pled in Plaintiffs' Amended Complaint. (*See* Docket No. 24 at 5; Docket No. 18). Defendant Springmeyer correctly notes that the Court does not need to evaluate this claim because it represents a new argument that was advanced in their Brief in Opposition to Defendant's Second Motion to Dismiss, not their Amended Complaint. (Docket No. 28 at 5). *See McKivitz v. Twp.*

*of Stowe*, 769 F. Supp. 2d 803, 836 n.26 (W.D. Pa. 2010).  Therefore, the Court will not consider Plaintiffs' failure to intervene claim against Defendant Springmeyer at this time.[23]

Disregarding the failure to intervene argument, in this Court's estimation, Plaintiffs have sufficiently pled in their Amended Complaint that Springmeyer participated in the raid on their home and the conduct of Springmeyer, along with the John Doe Defendants, qualifies as excessive force.  As a result, the Court denies Defendant Springmeyer's Motion to Dismiss on this ground.

### D.    Qualified Immunity

Finally, Defendant Springmeyer argues that, because Plaintiffs fail to allege that she individually violated their constitutional rights, she is entitled to qualified immunity.  (*See* Docket No 22 at 12-13, Docket No. 28 at 4-5).  As this Court has explained above, however, Plaintiffs have attributed conduct that potentially violates Plaintiffs' rights to be free from excessive force to Springmeyer.  (*See* Docket No. 18 at ¶ 22).  Therefore, Springmeyer's argument in support of qualified immunity is without merit, at this stage.

Qualified immunity is "'an *immunity from suit* rather than a mere defense to liability.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985)).  Furthermore, qualified immunity "'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S. Ct. 834, (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)); *see also Couden*, 446 F.3d at 492 (observing, "In the context of Fourth Amendment claims, qualified immunity operates to protect

---

[23]    Plaintiffs may amend their Amended Complaint to conform with the facts once they have undertaken discovery. *See supra* note 19.

officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful" (internal quotations and citations omitted)). "At the 12(b)(6) stage, qualified immunity will be found 'only when the immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 298 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Therefore, "if on its face the complaint fails to state a claim of a violation of clearly established law, 'a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Thomas*, 463 F.3d at 291 (quoting *Mitchell*, 472 U.S. at 526).

In *Ansell v. Ross Township*, the U.S. Court of Appeals for the Third Circuit described the process of determining whether an individual is entitled to qualified immunity:

> A two-step analysis governs the assessment of a government official's entitlement to qualified immunity: first, whether a constitutional right was violated, and second, whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). The first inquiry involves determining "whether the plaintiff's allegations are sufficient to establish the violation of a constitutional or statutory right at all." *S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417, 420 (3d Cir.2003) (quoting *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.2000)) (quotation marks omitted). The second "ask[s] whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Kopec v. Tate,* 361 F.3d 772, 776 (3d Cir.2004) (quoting *Saucier*, 533 U.S. at 201, 202, 121 S. Ct. 2151) (quotation marks omitted).

419 F. App'x at 212 (footnote omitted). Courts may analyze these steps, which are no longer mandatory, in the order warranted by the "circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

In the present matter, the Court has already determined that the Amended Complaint sets forth sufficient facts to support a claim for the violation of Plaintiffs' constitutional rights when

accepting the facts pled by Plaintiffs as true. Although Defendant Springmeyer maintains her entitlement to qualified immunity because "there was nothing unconstitutional about Agent Springmeyer's alleged conduct," the Court disagrees.[24] (Docket No. 22 at 13). As this Court explained above, Plaintiffs have stated a plausible claim for relief that Defendant Springmeyer violated their Fourth Amendment rights. To that end, the first step of the qualified immunity analysis is satisfied. *See Ansell*, 419 F. App'x at 212.

Next, the Court must determine whether "the right was clearly established," meaning "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 212 (internal quotations and citations omitted). "Qualified immunity is defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002) (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S. Ct. 992 (1975)); *see also Pearson*, 555. U.S. at 230-32 (explaining that "[a] right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates"). The officer's conduct must violate "clearly established law," such that "at the time of the challenged conduct, the contours of the rights are sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal punctuation and citations omitted).

---

[24] Defendant Springmeyer bears the burden of establishing her entitlement to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 808, 102 S. Ct. 2727 (1982); *see also Thomas v. Independence Twp.*, 463 F.3d 285, 289 (3d Cir. 2006) (stating that it "continue[s] to stand by established precedent that recognizes that a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense").

Here, the constitutional rights to be free from excessive force, as well as unreasonable searches and seizures under the Fourth Amendment, were clearly established. The *Sharrar* and *Graham* factors discussed above are well-recognized as guiding the evaluation of excessive force. *See Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596 (2004) (recognizing that "in an obvious case," the standard set forth in *Graham* can "clearly establish that force was excessive, even without a body of relevant case law"); *Couden*, 446 F.3d at 497 (finding that, through the application of the *Sharrar* factors, excessive force was clearly established); *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005) (determining that "[a] reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation"). Accordingly, if an officer unreasonably applies the *Sharrar* and *Graham* factors, which establish the confines of what may be regarded as excessive force, then he or she is not entitled to qualified immunity. *See Estate of Smith*, 430 F.3d. at 150. The Fourth Amendment rights to be free from unreasonable searches and seizures are likewise clearly established law. *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727 (1967) (stating, "The Fourth Amendment provides that, 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized'"); *Perez*, 2009 WL 1139642, at *6 (finding that "[t]he right to be secure in one's own home against unreasonable searches and seizures is a clearly established right") (citing *Payton v. New York*, 445, U.S. 573, 100 S. Ct. 1371 (1980)).

As the constitutional rights at issue were clearly established when the incident in the instant case occurred, a reasonable officer would have known that the force exerted against

Plaintiffs in these circumstances would qualify as constitutionally excessive. *See e.g. Coudon*, 446 F.3d at 497 (denying qualified immunity on Fourth Amendment excessive force claim where circumstances warranted a low level of force). A reasonable officer would also have known that forcibly and violently entering a home to execute an arrest warrant on an individual who had not resided there for nearly two years, awaking and gathering its inhabitants at gunpoint, escorting them outside in early morning while they were improperly dressed, and searching every room of their home amounted to unconstitutional conduct.

Accordingly, Defendant Springmeyer is not entitled to qualified immunity as to Plaintiffs' Fourth Amendment claims based on the record before the Court at this stage.

## V.        CONCLUSION

Given the Court's analysis above, Defendant Springmeyer's Motion to Dismiss is denied. An appropriate Order follows.


*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Date:   May 22, 2012

cc/ecf: All counsel of record.